IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RODNEY BARTHALOW, | Civil No. 1:05-CV-2593 |
| Plaintiff, | JUDGE SYLVIA H. RAMBO |
| v. | |
| DAVID H. MARTIN EXCAVATING, INC., | |
| Defendant. | |

## **MEMORANDUM**

This case arises out of dispute over Defendant David H. Martin Excavating, Inc.'s ("DHM") reasons for terminating Plaintiff Rodney Barthalow. Plaintiff has asserted violations of the Americans with Disabilities Act ("ADA"),[1] the Pennsylvania Human Relations Act ("PHRA"),[2] and the Family Medical Leave Act ("FMLA"),[3] and a claim of wrongful termination alleging retaliation for a workers' compensation claim.[4]  Presently before the court is DHM's Motion for Summary Judgment (Doc. 20).  For the reasons that follow, the court will grant the motion in part and deny it in part.  The court will deny the motion with respect to Barthalow's FMLA claim and grant it in all other respects.

---

[1] The ADA is codified at 42 U.S.C. §§ 12101 *et seq.*

[2] The PHRA is codified at 43 Pa. Cons. Stat. Ann. §§ 951 *et seq.*

[3] The FMLA is codified at 29 U.S.C. §§ 2601 *et seq.*

[4] Plaintiff also alleged negligent and intentional infliction of emotional distress claims, which the court dismissed on May 2, 2006.  (*See* Doc. 7.)

I.      **Background**

     A.   **Facts**

The following facts are undisputed, except where noted.[5] DHM is an excavation company that performs commercial and residential work. Barthalow was employed by DHM as a general laborer and buggy operator, beginning in 1997. Barthalow later operated a skid steer and a hydraulic drill. Barthalow asserts that the change in job responsibilities was a promotion, but DHM disputes that fact. DHM terminated Barthalow in December, 2003. DHM maintains that it terminated Barthalow because of poor job performance and habitual absenteeism. Barthalow maintains that his personnel file contains no record of poor job performance.

Jessica Barthalow, Plaintiff's wife, has required and continues to require frequent, unpredictable emergency hospitalization due to medical problems she has had since she was twenty-one years old. Jessica received a pacemaker in 2000. DHM was flexible with regard to Barthalow's requests for time off from

---

[5] The Middle District of Pennsylvania's Local Rule of Court 56.1 provides that a summary judgment motion must include a separate concise statement of material facts. M.D. Pa. Local R. 56.1. The rule also requires that an opposition to a summary judgment motion must similarly include a statement that "responds to the numbered paragraphs set forth in [the moving party's concise statement of material facts], as to which it is contended that there exists a genuine issue to be tried." *Id.* Moreover, "[a]ll material facts set forth in [the moving party's statement] will be deemed to be admitted unless controverted by the [opposing party's statement]." *Id.* Only the first fourteen paragraphs set forth in Barthalow's opposing statement of facts (Doc. 27) correspond to those in DHM's (Doc. 22). Barthalow's paragraphs fifteen through twenty appear to set forth separate statements of fact and the Rule 56.1 statement as a whole does not provide clear responses to paragraphs fifteen through forty of DHM's statement. Accordingly, the court will deem the facts in paragraphs fifteen through forty of DHM's statement to be admitted.

     In addition, DHM filed a "response" to Barthalow's statement of facts (Doc. 28), maintaining that such a response was warranted because of Barthalow's failure to file a statement of facts that exactly corresponds to DHM's Rule 56.1 statement. Such a "responsive" document is not provided for in, or permitted by the Local Rules of Court, *see id.*, and DHM did not seek leave of court before filing it. Thus, the court will not automatically assume that such a response is warranted and will disregard the document.

work, including permitting Barthalow's absence when he called in after the work day had begun, due to a family emergency. In addition, Barthalow was not denied use of vacation time.

Barthalow concedes that neither he, nor Jessica, provided DHM with excuses from a medical provider, or any medical documentation. Barthalow also admits that no medical provider ever provided him with any such written excuses. However, the parties dispute whether Barthalow made DHM aware of Jessica's significant medical problems when he was hired. Furthermore, Barthalow contends that his offer to provide medical documentation to DHM was rejected. In any event, Barthalow did not speak to a DHM supervisor or owner to request any proposed reasonable accommodation.

DHM maintains that during Barthalow's employment a poster setting forth employees' FMLA rights was posted on a wall in a garage/maintenance area at DHM's facilities that was accessible by all employees and open during DHM's regular business hours. Barthalow disputes whether the poster was hung in a conspicuous location because he never saw it, although he entered the garage at times.[6] The parties dispute whether DHM made Barthalow aware of the FMLA information or the poster at the time he was hired. It is undisputed that Barthalow did not request Family Medical leave. However, Barthalow attributes his failure to do so from his lack of knowledge and the lack of notice provided to him regarding the FMLA.

---

[6]Barthalow further avers that the poster was "conspicuously hung" after this action was commenced, but provides no evidence to that effect. At the summary judgment stage, the court is not bound to accept bald assertions as true; rather, a party must provide affirmative evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Procedural History

Barthalow commenced this action by filing the complaint (Doc. 1) on December 15, 2005. On May 2, 2006, the court granted DHM's unopposed motion to dismiss (Doc. 4) the emotional distress claims alleged in Counts V and VI. (*See* Doc. 7.) DHM subsequently filed its answer (Doc. 11) on May 15, 2006. Discovery closed on May 31, 2007. On June 14, 2007, DHM filed the instant motion for summary judgment (Doc. 20). The parties have briefed the issues and the motion is ripe for disposition.

## II. Legal Standard – Motion for Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply

sit back and rest on the allegations in its complaint. *See Celotex*, 477 U.S. at 324. Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**III.     Discussion**

      **A.     Count I – ADA Claim**

In Count I Barthalow asserts an ADA discrimination "by association" claim. The ADA prohibits discrimination "against a qualified individual with a disability because the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In addition, employers may not "exclude[] or otherwise deny[] equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

Both parties frame their arguments within the context of the McDonnell Douglas burden shifting scheme. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The now well-settled steps of *McDonnell Douglas* are: 1) the plaintiff must establish a *prima facie* case of discrimination; 2) the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection"; and 3) the plaintiff then bears the burden of showing that the employer's proffered reason is pretext and that the "presumptively valid reasons for [her] rejection were in fact a coverup for a [] discriminatory purpose." 411 U.S. at 802, 804-05. Although both parties also rely on the standard *prima facie* test used in direct discrimination claims, a different formulation applies to association discrimination claims. See *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1085 (10th Cir. 1997); *Erdman v. Nationwide Ins. Co.*, Civil Action No. 1:05-CV-0944, 2007 WL 1704648, at *6 (M.D. Pa. June 12, 2007). To establish a *prima facie* case of association discrimination, a plaintiff must prove the following:

> (1) the plaintiff was "qualified" for the job at the time of the adverse employment action;
> (2) the plaintiff was subjected to adverse employment action;
> (3) the plaintiff was known by his employer at the time to have a relative or an associate with a disability;
> (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

*Den Hartog*, 129 F.3d at 1085.

However the court does not even reach the *prima facie* test here. The ADA's plain terms "do not require an employer to make any 'reasonable accommodation' to the disabilities of relatives or associates of an employee who is

6

not himself disabled." *Id.* at 1084; *Larimer v. Int'l Bus. Mach., Corp.*, 370 F.3d 698, 700 (7th Cir. 2004) ("[T]he right to an accommodation . . . does not extend to a nondisabled associate of a disabled person."). *Kennedy v. Chubb Group of Insurance Cos.*, 60 F. Supp. 2d 384 (D.N.J. 1999) is instructive. The *Kennedy* court found that the ADA did not require the employer defendant to permit the plaintiff to work part time in order to care for her disabled son. *Id.* at 396. In so finding, the court cited not only *Den Hartog*, but also *Tyndall v. National Education Centers*, 31 F.3d 209, 214 (4th Cir. 1994); *Padilla v. Buffalo State College Foundation*, 958 F. Supp. 124, 128 (W.D.N.Y. 1997); and *Miller v. CBC Cos.*, 908 F. Supp. 1054, 1066 (D.N.H. 1995). In all of these cases, the courts found that employers were not required to accommodate employees' needs to miss work or alter work schedules to care for a disabled relative.

The instant case falls squarely within the factual context of those cases. The undisputed evidence shows that Barthalow's many absences exceeded his allotted vacation days. Barthalow makes no attempt to dispute this, but instead expressly argues that he is entitled to "protection under the [ADA] to properly care for and address [his wife's illness]." (Doc. 25 at 6.) Specifically, he asserts that he is entitled to a reasonable accommodation by being permitted to take leave from work when necessary to care for his wife. (*Id.* at 7.) Barthalow also indicates that DHM's refusal to transfer calls to him from his wife during the work day (instead, DHM required Barthalow to obtain a personal cell phone) amounts to an adverse employment action. (*Id.*) However, as a matter of law, DHM was not required to accommodate Barthalow either by providing additional leave or forwarding personal phone calls (thus, his need to purchase a cell phone cannot be considered an adverse

employment action).  Therefore, Barthalow's ADA claim fails and the court will grant summary judgment on Count I.

### B. Count II – PHRA Claim

In Pennsylvania, disability discrimination claims under the ADA and the PHRA are usually subject to the same analysis.  *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts.").  However, as another court in this district recently noted, "the PHRA does not contain an explicit association discrimination provision."  *Erdman*, 2007 WL 1704648, at *7 (concluding that discrimination by association is not a viable theory under the PHRA, citing *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 914 A.2d 477, 481 (Pa. Commw. 2007)); *see also Kennedy*, 60 F. Supp. 2d at 395 (similarly declining to find an association discrimination cause of action where the state statutory scheme lacked, and there was no indication that the state supreme court would endorse, such a provision).  Accordingly, this court concludes that the PHRA does not provide for discrimination by association.  Thus, Barthalow's PHRA claim is not viable as a matter of law and the court will grant summary judgment for DHM on Count II.

### C. Count III – Wrongful Termination Claim

In Count III, Barthalow avers that he was wrongfully terminated in retaliation for filing a workers' compensation claim.  As the parties both acknowledge, Pennsylvania is an at-will employment state, although a cause of action exists "for wrongful discharge under circumstances that violate public policy."  *Landmesser v. United Air Lines, Inc.*, 102 F. Supp. 2d 273, 276-77 (E.D. Pa. 2000).  To prove a claim of wrongful termination, an employee must

demonstrate that "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Id.* at 277-78; *see also Stoutmire v. Gen. Elec. Co.*, 68 Pa. D. & C.4th 519, 528 (Mercer Ct. Com. Pl. 2004).

The parties agree that the first two elements are satisfied – Barthalow's workers' compensation claim constituted protected employee activity and his termination was an adverse employment action that took place after Barthalow had filed the claim. The focus of their dispute is, then, on the causal connection element. The entirety of Barthalow's causation argument is that, because he was summarily terminated on the day he was scheduled to return to work following his workers' compensation furlough, a clear and direct causal link exists. (Doc. 25 at 11.) The court will not accept such a bald, conclusory statement as evidence. *Celotex*, 477 U.S. at 324. Barthalow offers no evidence to contradict the evidence adduced by DHM regarding his habitual absenteeism. In addition, DHM has set forth testimony regarding Barthalow's poor job performance with respect to drilling, punctuality, following instructions, etc., and verbal reprimands for the same. (Doc. 24, Def. Ex. G at 14:21-15:19, 17:24-18:5, 19:8-20, 26:20-27:6.). Barthalow's only response is that he was never reprimanded regarding poor job performance and that there is no record regarding poor job performance in his employee file. (Doc. 25 at 1.)

Even resolving a dispute regarding Barthalow's job performance, to the extent that there is one, in his favor, the undisputed evidence regarding his absenteeism is sufficient to preclude a finding of the requisite causation. In this regard, the court finds nothing that suggests that DHM factored Barthalow's

workers' compensation absence into its calculation of absenteeism. Accordingly, Barthalow's wrongful termination claim fails as a matter of law. The court will grant DHM's summary judgment motion with respect to Count III.

### D.     Count IV – FMLA Claim

Barthalow alleged in the complaint that he was denied FMLA leave and told that he did not qualify for it. However, Barthalow now concedes that he never requested FMLA leave, but argues that he didn't know about his rights or the procedure for requesting such leave because DHM failed to notify him regarding those rights. Thus, the initial question regarding Barthalow's FMLA claim is whether he was properly informed of his FMLA rights, as required by the FMLA. The FMLA provides, in relevant part, that:

> Each employer shall post and keep posted, in conspicuous places on the premises of the employer where notices to employees and applicants for employment are customarily posted, a notice, to be prepared or approved by the Secretary, setting forth excerpts from, or summaries of, the pertinent provisions of this subchapter and information pertaining to the filing of a charge.

29 U.S.C. § 2619(a). DHM presents evidence that a poster explaining employees' FMLA rights and setting forth relevant procedures regarding FMLA benefits was posted on a wall in a maintenance garage area accessible to all DHM employees during regular business hours. Barthalow admits that he entered the garage on occasion, but asserts that he never saw the poster.

The parties dispute whether DHM made Barthalow aware of the location of the poster when he was hired, but the court does not find this factual dispute to be material or genuine. The FMLA does not require verbal notice regarding FMLA rights, or the location of a notice regarding those rights, at the time

of hiring.  *See id.*  As a practical matter, if the FMLA notice is hung in a conspicuous location, it provides the requisite notice to employees regardless of whether additional verbal notice is made at the time of hiring.  Thus, a factual dispute over whether DHM told Barthalow about the poster when he was hired is immaterial because it would not bear upon the outcome of the suit under the applicable law.  *See Anderson*, 477 U.S. at 248.  Similarly, the dispute is not genuine because, even drawing the inference in favor of Barthalow, a lack of verbal notice at the time of hiring or any other time fails to provide a basis to return a verdict for him on the FMLA claim, so long as the poster was hung in a conspicuous location.  *Id.*

There is no genuine dispute that the poster was hung in a conspicuous location.  Barthalow does not contest that the maintenance garage is a sufficiently conspicuous location and he admits that he went there on occasion.  Rather, he asserts that the poster was not hung in a conspicuous location during his employment.  As previously noted, the court is not bound to accept bald assertions as true.  *Celotex*, 477 U.S. at 322-23.  At this stage in the litigation, discovery has closed and Barthalow has been afforded the opportunity to adduce evidence to support such an assertion, but he has failed to do so.  Accordingly, the court finds that DHM complied with the FMLA by hanging the poster in the maintenance garage, which was a sufficiently conspicuous location for the notice.  Because Barthalow went to the garage, he had at least constructive notice regarding the poster and his FMLA rights.

The parties also dispute whether Barthalow properly requested FMLA leave or notified DHM regarding his need for such leave.  Barthalow admits that he

never requested FMLA leave or notified DHM regarding an intent to do so.  The regulations interpreting the FMLA provide:

> An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on an expected birth, placement for adoption or foster care, or planned medical treatment for a serious health condition of the employee or of a family member.  If 30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances or a medical emergency, notice must be given as soon as practicable.

29 C.F.R. § 825.302(a).  DHM correctly notes that the regulations also require that "[a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave."  29 C.F.R. § 825.302(c).  However, DHM seems to ignore the remainder of the regulation in question, which goes on to state that

> [t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for an expected birth or adoption, for example.  The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken.  In the case of medical conditions, the employer may find it necessary to inquire further to determine if the leave is because of a serious health condition and may request medical certification to support the need for such leave.

*Id.*

        Accordingly, the fact that Barthalow never expressly requested FMLA leave does not necessarily preclude his FMLA claim.  Nor do the facts that Barthalow never provided DHM with documentation or excuses from a medical provider, or received any such excuses from a medical provider.  What is material is whether Barthalow ever indicated that he required leave because of circumstances

arising out of his wife's serious medical condition.  DHM avers that it "did not know the nature of [Jessica's] alleged illness or disability." (Doc. 22 ¶ 18.)  However, Barthalow asserts that he told DHM about his wife's condition when he started working at the company, (Doc. 23, Def. Ex. C at 33:20-34:12) and that his offers to provide medical documentation to DHM were refused (*See, e.g.*, *id.* at 32:9-33:12, 35:20-24).  In addition, Barthalow testified during his deposition that on a number of occasions he told DHM that his wife's need for medical care was the reason for his leave request.  (*See, e.g., id.* at 11:20-12:6, 30:20-31:11.)  This evidence creates a material factual dispute regarding whether Barthalow sufficiently stated a need for FMLA leave.  This factual dispute precludes a summary judgment determination regarding Barthalow's FMLA claim.  The court will deny DHM's summary judgment motion with respect to Count IV.

**IV.         Conclusion**

        In accordance with the foregoing, the court will grant DHM's summary judgment motion with respect to Barthalow's ADA, PHRA, and wrongful termination claims, and deny the motion with respect to the FMLA claim.  An appropriate order will issue.

                                         s/Sylvia H. Rambo
                                         SYLVIA H. RAMBO
                                         United States District Judge

Dated:  July 30, 2007.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RODNEY BARTHALOW, | Civil No. 1:05-CV-2593 |
| Plaintiff, | JUDGE SYLVIA H. RAMBO |
| v. | |
| DAVID H. MARTIN EXCAVATING, INC., | |
| Defendant. | |

# **O R D E R**

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT** Defendant David H. Martin Excavating, Inc.'s Motion for Summary Judgment (Doc. 20) is **GRANTED in part** and **DENIED in part**, as follows:

      1) Summary judgment is **GRANTED** on Counts I, II, and III of the complaint – Plaintiff's ADA, PHRA, and wrongful termination claims; and

      2) Summary judgment is **DENIED** on Count IV – Plaintiff's FMLA claim.

      s/Sylvia H. Rambo
      SYLVIA H. RAMBO
      United States District Judge

Dated: July 30, 2007.